United States District Court
Southern District of Texas
**ENTERED**
October 09, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Ana D. Abreu Puentes, et al., | § | |
| *Plaintiffs*, | § | |
| v. | § | Civil Action No. 4:26-cv-03591 |
| U.S. Citizenship and Immigration Services, et al., | § | |
| *Defendants*. | § | |

**MEMORANDUM AND RECOMMENDATION**

Defendants U.S. Citizenship and Immigration Services ("USCIS"); Joseph B. Edlow, Director of USCIS; U.S. Department of Homeland Security ("DHS"); Markwayne Mullin, Secretary of DHS (collectively, "the Government"), filed a motion under Fed. R. Civ. P. 12(b)(1) and (b)(6) to dismiss Plaintiffs' claims alleging that the Government has unreasonably delayed adjudication of their petitions for adjustment of status. *See* Dkt. 29. After carefully considering the motion, Plaintiffs' response, Dkt. 33, the Government's reply, Dkt. 34, the pleadings, and the applicable law, it is recommended that the motion be granted.

## **Background**

Plaintiffs are fifty-eight Cuban citizens and two Mexican citizens who filed petitions for adjustment of status, Form I-485, with USCIS under the Cuban Adjustment Act ("CAA"), Pub. L. No. 89-732, 80 Stat. 1161 (codified as note to 8 U.S.C. § 1255), *as amended by* Refugee Act of 1980, Pub. L. No. 96-212 § 212(i), 94 Stat. 102 (1980), and related petitions for employment authorization, Form I-765. Dkt. 24 at 7. Plaintiffs complain that, despite their qualification for relief, the Government has not resolved their petitions, which have been pending from eight months to several years. *See id.* at 44. Plaintiffs contend that the Government's inaction has left them in an "immigration limbo" that renders them unable to obtain Lawful Permanent Residence ("LPR") status, obtain employment, and earn income. *See id.* at 5.

The centerpiece of the complaint concerns two interrelated USCIS policy memoranda: PM-602-0192 and PM-602-01994. *See* Dkt. 24 at 44-48, 53-54. The first of those is titled Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries, PM-602-0192 (December 2, 2025), *available at* https://perma.cc/8AZM-QHDR. Dkt. 24 at 53. As its name reflects, that policy placed an agency-wide hold on all pending immigration benefits applications for petitioners from certain countries, including Cuba. *See id.* at 45, 54. The hold was later supplemented and revised by a second policy, Hold and Review of USCIS Benefit Applications

Filed by Aliens from Additional High-Risk Countries, PM-602-0194 (January 1, 2026), *available at* https://perma.cc/9P5M-256P (collectively with PM-602-0192, the "Benefits Hold Policies").

The complaint also mentions a third policy: Adjustment of Status is a Matter of Discretion and Administrative Grace, and Extraordinary Relief that Permits Applicants to Dispense with the Ordinary Consular Visa Process, PM-602-0199 (May 21, 2026), *available at* https://perma.cc/R6NG-RDFA ("Policy 0199"). *See* Dkt. 24 at 47. Policy 0199 essentially disfavors granting adjustment of status under Section 245 of the Immigration and Nationality Act ("INA") if the applicant should have left the country and utilized the consular immigrant visa process instead. *See* Policy 0199 at 3-5.

On May 4, 2026, Plaintiffs filed this action, asserting claims under the Administrative Procedure Act ("APA"), and the Mandamus Act, 28 U.S.C. § 1361. Dkt. 1 at 4. Their current amended pleading alleges that (a) the Government violated the APA, 5 U.S.C. §§ 555(b), 706(1), by failing to resolve their petitions within a reasonable time (Counts One and Two); (b) the Government's failure to fulfill its obligations to adjudicate Plaintiffs' petitions warrants mandamus relief, 28 U.S.C. § 1361 (Counts Three and Four); and (c) the Holds Benefits Policies are arbitrary and capricious and should be invalidated under the APA, 5 U.S.C. § 706(2)(A) (Count Five). *See* Dkt. 24 at 54-60 (third amended complaint).

In June 2026, the U.S. District Court for the District of Rhode Island issued an order vacating the Benefits Hold Policies. *See Dorcas Int'l Inst. of R.I. v. USCIS*, 834 F. Supp. 3d 242, 267, 328 (D.R.I. 2026). Although the Government sought a stay of that order pending appeal, its request was denied with respect to those policies. *See Dorcas Int'l Inst. of R.I. v. USCIS*, 186 F.4th 883, 884 (1st Cir. 2026). In the interim, USCIS has acknowledged that the vacatur "applies agency-wide" and instructed that the Benefits Hold Policies "should be treated as if they are not in effect." Court Order on Hold Policies (June 12, 2026), *available at* https://perma.cc/Q625-SACV. The *Dorcas* ruling does not apply to or affect Policy 0199.

**<u>Legal Standard</u>**

"Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *Id.* at 287. The plaintiff bears the burden to establish that subject-matter jurisdiction exists. *Id.* at 286.

## Analysis

This suit alleges that the Government has wrongfully delayed resolution of Plaintiffs' applications for adjustment of status under the CAA. But because the CAA sets no deadline for resolving the applications, the Government is correct that Plaintiffs' challenges falter under the Fifth Circuit's expansive reading of the INA's jurisdiction-stripping provision, 8 U.S.C. § 1252(b)(2)(B), to foreclose review of both the Government's discretionary resolution of an application and the timing of when to resolve it. That jurisdictional barrier precludes Plaintiffs' claims under the APA and the Mandamus Act. The three recent policies featured in Plaintiffs' complaint do not change the result: two have been vacated and the third does not apply to CAA applications. Accordingly, this Court should grant the Government's motion to dismiss and dismiss all claims for lack of jurisdiction.

### I. This Court lacks jurisdiction over Plaintiffs' APA claims.

According to the Government, the APA does not confer federal courts with jurisdiction to compel adjudication of Plaintiffs' applications under the CAA because agency action regarding their pending Form I-485 and I-765 petitions is solely discretionary. *See* Dkt. 29 at 4. Plaintiffs acknowledge that the agency has discretion when determining whether a petition should be granted or denied. But Plaintiffs argue that the APA imposes a non-discretionary duty on USCIS to resolve Plaintiffs petitions within a reasonable

time. Dkt. 33 at 3-4 (citing 5 U.S.C. § 555(b)). And according to Plaintiffs, the Government has unreasonably delayed resolving their applications, which has been compounded by the recent Benefits Hold Policies. Dkt. 33 at 18.

Under Fifth Circuit law, USCIS's discretion to determine whether to grant or deny adjustment of status under the CAA includes the discretion to determine when to resolve it. That discretion, in turn, bars judicial review. Plaintiffs' APA claims should be dismissed for want of jurisdiction.

### A. The interplay between the APA and the INA's jurisdiction-stripping provision

Section 706 of the APA, which authorizes judicial review of agency action, does not apply where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(1), (2). In the mine-run APA case, whether agency action is discretionary versus mandatory is classified as a merits question, rather than a jurisdictional issue. *See Fort Bend Cnty. v. United States Army Corps of Eng'rs*, 59 F.4th 180, 192 (5th Cir. 2023).

But for immigration cases, 8 U.S.C. § 1252(a)(2)(B)(ii) explicitly "strips courts of jurisdiction to review 'any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security ....'" *D'Cruz v. U.S. Citizenship &*

*Immigr. Servs.*, 2024 WL 4523307, at *3 (S.D. Tex. Oct. 9, 2024) (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)). Section 1252(a)(2)(B)(ii) therefore makes agency discretion indispensable to the jurisdictional inquiry. *See Bouarfa v. Mayorkas*, 604 U.S. 6, 10-11 (2024) (noting, in the immigration context, that "properly identifying the mandatory or discretionary nature of a particular agency decision can be critical, precisely because that status has implications for whether the agency's decision can be challenged in court"); *see also Hernandez v. Jaddou*, 2025 WL 2264604, at *2 (S.D. Tex. Apr. 3, 2025).

### B. USCIS's discretion over when to resolve a CAA application forecloses jurisdiction over Plaintiffs' APA claims.

The Government emphasizes the CAA's discretionary language, which states that the status of a Cuban citizen or national "who has been inspected and admitted or paroled into the United States … and has been physically present in the United States for at least one year, *may be adjusted by the Attorney General, in his discretion* and under such regulations as he may prescribe," Cuban Adjustment Act, Pub. L. 89-732, 801 Stat. 1161 (Nov. 2, 1966), *as amended by* Refugee Act of 1980, Pub. L. No. 96-212 § 212(i), 94 Stat. 102 (1980) (emphasis added). *See* Dkt. 29 at 5. According to the Government, the Fifth Circuit's recent decision in *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2025), *cert. denied* 145 S. Ct. 1126 (2025), reflects that the agency

discretion conferred by the CAA extends beyond resolving applications to include the timing of their resolution. Dkt. 29 at 7.

The Government's reading of *Cheejati* is correct. In *Cheejati*, the Fifth Circuit held that the INA's jurisdiction-stripping provision, 8 U.S.C. § 1252(a)(B)(ii), barred review of an APA claim challenging the delayed adjudication of petitioners' Form I-485 applications for adjustment of status to lawful permanent residence. *Cheejati*, 106 F.4th at 390, 393-94. There, the Government had decided to hold the petitioners' applications in abeyance—a policy called a "retrogression hold"—because the volume of applications exceeded the number of available visas. *See id.* at 392. The Fifth Circuit concluded that because the adjustment of status provision, 8 U.S.C. § 1255(a), left both the decision whether to adjust status and the timing of the decision to the Attorney General's discretion, "that discretionary action cannot be reviewed by federal courts." *Id.* at 394.

The Fifth Circuit's analysis focused on Supreme Court and earlier circuit caselaw stressing the breadth of Section 1252(a)(B)'s language, which strips federal courts of jurisdiction over "any judgment regarding the granting of relief" for adjustment of status and "*any other* decision *or action* of the Attorney General" that is specified to be within the Attorney General's discretion, 8 U.S.C. § 1252(a)(B)(i)-(ii) (emphasis added). *See id.* at 393-94 (analyzing *Patel v. Garland*, 593 U.S. 328 (2022), and *Bian v. Clinton*, 605 F.3d 249 (5th

Cir. 2010), *vacated as moot*, 2010 WL 3633770 (5th Cir. Sept. 16, 2010) (per curiam)). Applying *Patel*'s "expansive reading" of Section 1252(a)(2)(B), the *Cheejati* court concluded the word "'any' operates to augment the purview of § 1252(a)(2)(B)(ii) to preclude judicial review of DOS's and USCIS's retrogression hold policies, which are practical applications of the discretion afforded the Attorney General in § 1255(a)." *Cheejati*, 106 F.4th at 394.

In addition, the Fifth Circuit relied on its decision in *Bian*, 605 F.3d at 252-54, which construed Section 1252(a)(2)(B)(ii)'s preclusion of judicial review of any "action" to include not only "final, discrete" decisions by the USCIS, but also "interim decisions made during the adjudicative process ...." *Id.* (quoting *Bian*, 605 F.3d at 253-54). The *Cheejati* court noted that adjustments of status "are adjudicated 'in [the Attorney General's] discretion and under such regulations as he may prescribe." *Id.* (quoting 8 U.S.C. § 1255(a)). That language "leaves not only the ultimate decision to adjust an applicant's immigration status but also actions taken in the course of the decision-making *process*—including the pace at which that process is undertaken—to the discretion of the Attorney General." *Id.* at 394.

*Cheejati*'s reasoning forecloses jurisdiction here. Like the general adjustment-of-status provision, 8 U.S.C. § 1255(a), the CAA permits—but does not require—the Attorney General to adjust the status of certain qualified Cuban nationals "in his discretion and under such regulations as he may

prescribe." Pub. L. No. 89-732, 80 Stat. 1161, *as amended by* Refugee Act of 1980, Pub. L. No. 96-212 § 212(i), 94 Stat. 102 (1980). That means all "actions taken in the course of the decision-making process—including the pace at which that process is taken"—are discretionary and beyond this Court's review. *See Cheejati*, 106 F.4th at 394.

Plaintiffs' attempts to distinguish *Cheejati* are unpersuasive. For instance, Plaintiffs assert that they are not challenging "the manner in which USCIS is processing applications pending satisfaction of a statutory prerequisite," but instead are complaining of USCIS's "fail[ure] to reach any final adjudication" of their applications. Dkt. 33 at 11. But factual differences between the adjustments of status affected by the retrogression policy in *Cheejati* and adjudications of CAA applications make no difference. As a matter of law, *Cheejati* holds that Section 1252(a)(2)(B) divests federal courts of jurisdiction to compel the Attorney General to resolve any decision that the INA vests him with discretion to make, including the pace of the decision-making process itself. That holding applies equally to the CAA.

Plaintiffs' further reliance on the recent Benefits Hold Policies and Policy 0199 is misplaced. As the Government explains, the Benefits Hold Policies are not in effect because they were vacated by a district court and the Government has directed the agency to not enforce them. *See* Dkt. 29 at 2-3; Dkt. 34 at 1. Court Order on Hold Policies (June 12, 2026), *available at*

https://perma.cc/Q625-SACV. Although Plaintiffs stress the Government's pending appeal of the vacatur order, *see* Dkt. 33 at 13, the fact remains that those policies have no present impact on the adjudication of Plaintiffs' applications. Whatever incidental delay those policies may have occasioned before their vacatur does not alter the conclusion that the Attorney General's explicit discretion over the timing of resolving CAA applications divests this Court of jurisdiction to remedy the delay. The Benefits Holds Policies provide no hook for relief. *See Cagiza v. Mullin*, 2026 WL 2211631, at *3 (S.D. Tex. July 22, 2026) (finding no likelihood of success and denying injunctive relief premised on the same "adjudication hold" policy that "has been vacated"), *adopted by* 2026 WL 2211646 (S.D. Tex. July 31, 2026).

Plaintiffs' reliance on Policy 0199, which remains in effect, is even less tenable because the Government correctly explains that it does not apply to CAA applicants. *See* Dkt. 34 at 2. Policy 0199 instructs officers to consider the availability of "consular processing" when evaluating petitions to adjust status. Policy 0199 at 5. Consular processing applies to "aliens seeking to immigrate through the ordinary immigration process from abroad ...." *See id.* at 3. According to Policy 0199, aliens who were paroled or admitted as nonimmigrants should leave the United States and pursue an immigrant visa through the "ordinary consular immigrant visa process" rather than remain here and seek adjustment of status under Section 245 of the INA. *See id.* at 4.

Failure to meet that expectation would be treated as an "adverse factor[ ]" counseling against adjustment of status. *See id.* at 4-5.

In contrast, the CAA provides a materially different, parallel means for qualified Cuban nationals to adjust their status. *See* Pub. L. 89-732, 80 Stat. 1161 (Nov. 2, 1966), *as amended by* Refugee Act of 1980, Pub. L. No. 96-212 § 212(i), 94 Stat. 102 (1980). Notably, the CAA requires that a Cuban citizen be physically present in the United States "for at least one year" to apply for adjustment of status. *See id.*; *see also, e.g.*, *Quintero v. U.S. Atty. Gen.*, 288 F. App'x 586, 590 (11th Cir. 2008) (per curiam) (noting the one-year requirement). That domestic presence requirement makes Policy 0199's presumption of "consular processing" while applying from abroad inapplicable to persons seeking CAA relief. Policy 0199 is irrelevant here.

The irrelevance of Policy 0199 to Plaintiffs' applications forecloses their standing to challenge it. At best, Plaintiffs' assert a generalized grievance that Policy 0199 "subvert[s] decades of congressionally mandated routes to adjustment Section 245 of the INA ...." *See* Dkt. 24 at 48. But Plaintiffs cannot articulate an injury-in-fact that is traceable to Policy 0199 and would be redressable if the policy were invalidated because the policy does not apply to their CAA applications. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (injury, causation, and redressability requirements for Article III standing); *see also, e.g.*, *Brooks v. Snow*, 313 F. Supp. 2d 654, 659 (S.D. Tex.

2004) (no standing to challenge a regulation authorizing compromise of certain taxpayer liabilities because plaintiffs never sought relief under that regulation and could not show they were "aggrieved by any final agency action either in the implementation of the regulation or in having any offers-in-compromise denied"); *cf. Adimora-Nweke v. Yarbrough-Smith*, 2021 WL 6113550, at *3 (S.D. Tex. Sept. 9, 2021) (plaintiff "cannot be injured" by a form that omitted a statutory notice that "did not apply to him"), *adopted by* 2021 WL 5711787 (S.D. Tex. Dec. 2, 2021). As a result, this Court should dismiss the APA claims for lack of jurisdiction.

## II. Mandamus relief is not available.

For related reasons, this Court has no jurisdiction to grant mandamus relief. Section 1252(a)(2)(B)(ii), which bars jurisdiction over Plaintiffs' APA claims, *see supra* Part I, "expressly identifies § 1361—the Mandamus Act—"as one of the 'other provision[s] of law' from which it strips jurisdiction." *Khalil v. Hazuda*, 2015 WL 4478861, at *5 (S.D. Tex. July 22, 2015); 8 U.S.C. § 1252(a)(2)(B)(ii). The Attorney General's discretion to decide when to adjudicate CAA applications therefore triggers Section 1252(a)(2)(B)(ii)'s jurisdictional bar for mandamus relief just as it does for Plaintiffs' APA claims. *Cf. Parveen v. McAleenan*, 410 F. Supp. 3d 809, 815 (S.D. Tex. 2019) (invoking "the jurisdiction-stripping provision in Section 1252" when rejecting

mandamus jurisdiction over claim that USCIS unreasonably delayed resolution of I-485 application—which was a discretionary action).

Moreover, to maintain a mandamus claim, "[a] plaintiff must show a clear right to the relief sought, a clear duty by the defendant to do the particular act, and that no other adequate remedy is available." *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002) (citations omitted). "Mandamus is not available to review discretionary actions of agency officials." *Id.* (citation omitted). That includes CAA adjudications and the timing of their resolution. This Court lacks mandamus jurisdiction to grant relief.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendants U.S. Citizenship and Immigration Services', Joseph B. Edlow, Director of USCIS's; DHS's and Markwayne Mullin, Secretary of DHS's motion to dismiss (Dkt. 29) be **GRANTED**, and that Plaintiffs' claims be **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on October 9, 2026, at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge